**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | | |
|---|---|---|
| MISSOURI RIVER HISTORICAL DEVELOPMENT, INC., | | |
| Plaintiff, | | No. 12-CV-4007-LRR |
| vs. | | **ORDER** |
| PENN NATIONAL GAMING, INC., | | |
| Defendant. | | |

*TABLE OF CONTENTS*

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. STANDARDS OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.  FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.   Players.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.   Operating Agreement.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *C.   Renewal Negotiations.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *D.   Penn's Communications with Other Operators.* . . . . . . . . . . . . *6*

*V.   SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . *6*
    *A.   Failure to Join an Indispensable Party..* . . . . . . . . . . . . . . . . . *7*
        *1.   Necessary party.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
            *a.   Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . *8*
            *b.   Applicable law..* . . . . . . . . . . . . . . . . . . . . . . . *8*
            *c.   Discussion.* . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
        *2.   Whether nonparty can be joined.* . . . . . . . . . . . . . . . . . *12*
        *3.   Whether action can continue in equity and
                    good conscience.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
            *a.   Rule 19(b) factors.* . . . . . . . . . . . . . . . . . . . . . *14*
            *b.   Additional factors..* . . . . . . . . . . . . . . . . . . . . *17*
    *B.   Failure to Plead Jurisdictional Amount.* . . . . . . . . . . . . . . . . *18*

*VI.  FAILURE TO STATE A CLAIM..* . . . . . . . . . . . . . . . . . . . . . . . . *18*

*VII. CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## I. INTRODUCTION

The matter before the court is Defendant Penn National Gaming, Inc.'s ("Penn") "Motion to Dismiss" ("Motion") (docket no. 17).

## II. PROCEDURAL BACKGROUND

On January 12, 2012, Plaintiff Missouri River Historical Development, Inc. ("MRHD") filed a Complaint (docket no. 2). Count I of the Complaint alleges that Penn interfered with MRHD's prospective business relationship with other casino operators. Count II of the Complaint alleges that Penn engaged in unfair competition with other casino operators. Count III of the Complaint asks the court to enter a preliminary injunction against Penn enjoining Penn from interfering with MRHD's prospective business advantage with other casino operators and from engaging in efforts to exclude competition with other casino operators.

On February 3, 2012, Penn filed the Motion on the grounds that MRHD failed to join an indispensable party, failed to plead the requisite amount in controversy to support diversity jurisdiction and failed to state a claim upon which relief may be granted. On February 21, 2012, MRHD filed a Resistance (docket no. 22). On March 2, 2012, Penn filed a Reply (docket no. 23). The parties did not request a hearing on the Motion and the court finds that a hearing is unnecessary. The matter is fully submitted and ready for decision.

## III. STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal on the basis of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). When considering a Rule 12(b)(6) motion, the court views the evidence in the light most

favorable to the nonmoving party. *See Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) ("When ruling on a motion to dismiss, the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.").

Federal Rule of Civil Procedure 12(b)(1) provides that a party may raise the defense of "lack of subject-matter jurisdiction" in a motion before answering the complaint filed in any action. Fed. R. Civ. P. 12(b)(1). As subject matter jurisdiction is a threshold consideration, the court has "'broader power to decide its own right to hear the case than it has when the merits of the case are reached.'" *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). When considering a Rule 12(b)(1) motion for lack of subject matter jurisdiction, the court does not grant the same deference to the nonmoving party and has broader power to decide jurisdictional issues than when considering a motion to dismiss under Rule 12(b)(6). "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." *Osborn*, 918 F.2d at 729.

To dismiss for want of subject matter jurisdiction under Rule 12(b)(1), the moving party must successfully challenge the complaint either "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack to jurisdiction, all of the factual allegations regarding jurisdiction are presumed true and the motion to dismiss succeeds only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id*. However, in a factual attack to jurisdiction, the court can consider competent evidence, such as affidavits, deposition testimony and the like, in order to determine the factual dispute. *Id*. In this case, Penn challenges the jurisdictional facts alleged by MRHD; that is, Penn questions whether Belle is an indispensable party whose joinder will destroy the court's subject matter jurisdiction. Accordingly, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed*.

*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "[N]o presumptive truthfulness attaches to [MRHD's] allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen*, 549 F.2d at 891). MRHD has "the burden of prov[ing] that jurisdiction does in fact exist." *Id.* The court may therefore consider materials outside the pleadings to the extent those materials are necessary to determine whether it has subject matter jurisdiction over MRHD's claims.

## IV. FACTUAL BACKGROUND

### A. Players

MRHD is an Iowa nonprofit corporation organized and existing under Iowa Code chapter 504 with its principal place of business in Sioux City, Iowa. MRHD holds a license to operate gambling games in Woodbury County, Iowa. Penn is a corporation with its principal place of business in Wyomissing, Pennsylvania. Penn owns, operates or has ownership interests in gaming facilities across the country.

Belle of Sioux City, L.P. ("Belle") is an Iowa limited partnership with its principal place of business in Iowa. Belle operates the Argosy-Sioux City casino. Penn owns the entities that make up Belle's limited partnership.[1]

### B. Operating Agreement

On May 27, 1992, MRHD and Belle, which was known at the time as Sioux City Riverboat Corp., entered into a Management and Operation Agreement ("Agreement") to operate the Argosy-Sioux City casino. MRHD and Belle hold a joint license to operate the Argosy-Sioux City casino. Under the joint license, MRHD is the qualified sponsoring organization and Belle is the operator. The Agreement had an initial term of ten years,

---

[1] Penn is a limited partner of Belle. Argosy Gaming Company is Belle's other limited partner, and Iowa Gaming Company is Belle's general partner. Iowa Gaming Company and Argosy Gaming Company are wholly owned subsidiaries of Penn.

4

with two five-year renewal options. Belle exercised both renewal options, and the Agreement will terminate on July 6, 2012. Penn is not a party to the Agreement.

Several provisions of the Agreement discuss the exclusivity of the casino operation. Recital C states that Belle is the exclusive operator and manager of MRHD's games. The Agreement specifically states:

> MRHD and Operator desire to establish an operation and management agreement, whereby MRHD will authorize Operator as its sole and exclusive Operator and manager of the gambling games that MRHD is licensed to operate during the term of this Agreement unless terminated as hereinafter provided or non-approval of Operator by the Iowa Racing and Gaming Commission. The operation of such Gambling Games will be conducted exclusively on the Riverboat to be operated by Operator.

Agreement, Plaintiff's Exhibit 2 (docket no. 2-3) at 1. Section 1.A of the Agreement appoints Belle as the exclusive operator of MRHD's riverboat casino: "Subject to the terms and conditions of this Agreement, MRHD hereby selects and appoints Operator as its exclusive Operator for the purpose of conducting Gambling Games on the Riverboat to be operated by Operator during the term of this Agreement . . . ." *Id.* at 2. Finally, Section 11.A of the Agreement includes a provision requiring MRHD to support Belle and help Belle maintain its exclusivity:

> Support of MRHD: MRHD agrees that Operator is the exclusive licensee to operate a gambling enterprise within the Woodbury County area and agrees to use its best efforts to insure that Operator maintains its exclusivity. Further MRHD agrees to use its best efforts to assist Operator in obtaining necessary licensing and permits for liquor, food, signage, amusements and similar permitted activities.

*Id.* at 9.

### C. Renewal Negotiations

On January 27, 2011, the president of MRHD, Mark Monson, contacted the general manager of the casino, Kess Eder, to encourage Eder to begin negotiating a renewal of the

Agreement. Monson stated that he contemplated another ten-year term with two five-year renewal options. Between April of 2011 and July of 2011, MRHD and Belle negotiated for renewal of the Agreement. In July of 2011, the parties had reached substantial agreement as to the terms of a renewed agreement. During the negotiations, however, MRHD met with representatives of other gaming companies regarding the possibility of operating a casino in Sioux City or Woodbury County pursuant to a license with MRHD. On August, 29, 2011, Monson informed Belle that it intended to announce a request for proposal process to obtain bids on the operating and management of MRHD's games. Belle continued negotiations for a renewal of the Agreement over the following months without success, although the parties did file a joint application for renewal of their gaming license.

### D. *Penn's Communications with Other Operators*

Belle does not have in-house counsel and relies on Penn to provide legal services. On December 28, 2011, Carl Sottosanti, deputy general counsel for Penn, sent letters to various casino operators on Belle's behalf. The letters stated that "the existing Management and Operation Agreement between MRHD and Belle . . . prohibits MRHD from taking any action to develop or operate a casino in Woodbury County with anyone other than Belle of Sioux City." Letter, Plaintiff's Exhibit 3 (docket no. 2-4) at 1; Letter, Plaintiff's Exhibit 4 (docket no. 2-5) at 1. The letters go on to state that the Agreement "requires MRHD to use its 'best efforts' to insure that Belle . . . maintains its status as the exclusive licensee in Woodbury County" and "Belle . . . considers any action taken by third parties/operators that facilitates any breach by MRHD of the [Agreement] to be legally actionable and likely to result in significant damages." Letter, Plaintiff's Exhibit 3 at 1-2; Letter, Plaintiff's Exhibit 4 at 1-2.

### V. *SUBJECT MATTER JURISDICTION*

MRHD asserts in the Complaint that this court has jurisdiction over its claims against Penn because there is complete diversity among the parties. *See* 28 U.S.C. §

1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). MRHD is an Iowa limited partnership, and Penn is a corporation with its principal place of business in Pennsylvania. Thus, there is complete diversity between the named parties to the instant action.

Penn, however, argues in the Motion that Belle is an indispensable party and that this court does not have subject matter jurisdiction over MRHD's claims against Penn because joining Belle to the action will destroy diversity jurisdiction. Penn also argues that MRHD failed to plead the requisite jurisdictional amount in the Complaint.

In its Resistance, MRHD argues that Belle is not a necessary and indispensable party because MRHD's claims against Penn are tort claims that do not require interpretation of the Agreement between Belle and MRHD, and, therefore, complete relief can be provided to the parties in Belle's absence. MRHD also claims that it is not necessary to plead an amount greater than the jurisdictional amount to invoke diversity jurisdiction and that it must only prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.

### A. Failure to Join an Indispensable Party

"'The determination of whether or not a person is an indispensable party is one which must be made on a case-by-case basis and is dependent upon the facts and circumstances of each case.'" *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 308 (8th Cir. 2009) (quoting *Helzberg's Diamond Shops, Inc. v. Valley W. Des Moines Shopping Ctr., Inc.*, 564 F.2d 816, 819 (8th Cir. 1977)). "Under Federal Rule of Civil Procedure 19, a nonparty is indispensable to an action if (1) the nonparty is necessary; (2) the nonparty cannot be joined; and (3) the action cannot continue in equity and good conscience without the nonparty." *United States ex rel. Steele v. Turn Key Gaming, Inc.*, 135 F.3d 1249, 1251 (8th Cir. 1998). The court will analyze each of these elements in turn.

### 1. Necessary Party

#### a. Parties' arguments

Penn contends that Belle is a necessary party because "[t]he real issue here is MRHD's attempt to avoid its contractual promise to Belle to use its 'best efforts' to insure that Belle maintains its status as the exclusive casino operator in Woodbury County." Brief in Support of Motion (docket no. 17-1) at 7. First, Penn argues that the court cannot fully adjudicate MRHD's claims because Belle would be free to enforce its contractual rights against MRHD independent of any ruling against Penn. Penn further argues that the action lacks redressability on this ground. Second, Penn argues that Belle's ability to protect its interests would be impaired or impeded if the action were litigated in Belle's absence because, to resolve MRHD's claims of interference with prospective business advantage and unfair competition, the court must interpret Belle's rights under the Agreement to determine whether MRHD has the right to pursue prospective business advantage with other qualified operators. Third, Penn argues that there is a risk of inconsistent rulings regarding Section 11.A of the Agreement because there may be incompatible judicial determinations as to MRHD and Belle's rights under the Agreement if Belle or MRHD file actions in state court under the contract.

In its Resistance, MRHD argues that disposing of the action in Belle's absence would not impair Belle's ability to protect its interests because there are no claims asserted against Belle, and, therefore, it has no interest in this matter. MRHD further argues that the instant action concerns only Penn's interference, not Belle's rights to protect its contractual interests, and that Penn is not faced with any risk of double or multiple obligations for the relief MRHD seeks because there are no other pending actions relating to the subject matter of this case.

#### b. Applicable law

Rule 19(a) defines which parties are necessary to an action if joinder is feasible:

> **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

The Advisory Committee notes to Rule 19 state that clause (1) of Rule 19(a)

> stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.

Fed. R. Civ. P. 19 advisory committee notes. "The requirement under Rule 19(a)(1) that complete relief be available does not mean that every type of relief sought must be available, only that meaningful relief be available." *Henne v. Wright*, 904 F.2d 1208, 1212 n.4 (8th Cir. 1990).

### c. Discussion

The conduct that MRHD challenges is Penn's sending of letters to other casino operators. The letters illustrate that Penn sent them on Belle's behalf. Even if MRHD obtains a judgment against Penn, any such judgment will not prevent Belle from taking the same or similar actions to protect its perceived contractual interests. Therefore, any relief afforded between the parties would be hollow and would not resolve the high likelihood

9

of additional lawsuits regarding the same subject matter between MRHD and Belle. *See, e.g.*, *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124-25 (2d Cir. 1990); *Integrated Bus. Info. Serv. (Proprietary) Ltd. v. Dun & Bradstreet Corp.*, 714 F. Supp. 296, 302 (N.D. Ill. 1989). Furthermore, there is a strong possibility that Belle will pursue a breach of contract action against MRHD for the same acts that prompted Penn to send the letters on Belle's behalf. Where Belle may have a cause of action against MRHD for the facts underlying the instant action and where any injunction against Penn will not similarly bind Belle, the court finds that it cannot afford complete relief among the existing parties.

Even if the court could accord complete relief between the existing parties, any decision by the court would impair or impede Belle's ability to protect its interests in maintaining its position as the exclusive casino operator in Woodbury County. MRHD asks the court to interpret Section 11.A of the Agreement in its Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction (docket no. 10) ("Injunction Memorandum"). As MRHD appears to recognize in the Injunction Memorandum, the underlying issue in this dispute is whether, under the Agreement, Belle could prevent MRHD from negotiating with other casino operators to operate casinos in Woodbury County. If Belle could prevent MRHD from negotiating with other casino operators, then Penn would not be liable in tort for acting on Belle's behalf to protect Belle's interests under the Agreement. *See Hoefer v. Wis. Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 341 (Iowa 1991) ("[P]laintiffs who allege tortious interference with prospective business relations are held to a strict standard of substantial proof 'that the defendant acted with a predominantly improper purpose.'" (quoting *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 800 (Iowa 1984))).

Therefore, this case requires the court to interpret the Agreement to determine what rights the parties have under the Agreement before it can decide whether Penn committed any tort. *See Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) (holding that,

in a suit for trespass, a nonparty claiming an interest in the same land claimed by the plaintiff was a necessary party because the court had to first determine which party owned the land before it could decide the trespass issue). Belle has an interest in maintaining its position as the exclusive casino operator in Woodbury County, and a judgment in this case will necessarily affect that interest and Belle's rights relating to it. *Cf. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 251 (4th Cir. 2000) (holding that a nonparty was a necessary party because resolution of the dispute required the court to interpret the meaning of provisions of a contract between the plaintiff and the nonparty, and a judgment would, therefore, impede the nonparty's ability to protect its interests); *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999) (holding that a local union affiliate was a necessary party because it was a signatory to the contract at issue between the plaintiff and another local union affiliate and the court's interpretation of the contract would affect the interests of the nonparty union affiliate's members); *Interstate Commerce Comm'n v. Blue Diamond Prods. Co.*, 192 F.2d 43, 47 (8th Cir. 1951) (holding that parties who had leased trucks to a defendant were necessary parties because the plaintiff was seeking an injunction to stop the defendant's use of certain motor carriers and the controversy would determine whether the nonparties' leases were void). Thus, proceeding in Belle's absence will impair or impede Belle's ability to protect its interests.

Finally, failure to join Belle would leave MRHD or Belle subject to a substantial risk of incurring inconsistent obligations. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Delgado v. Plaza Las Ams., Inc.*, 139 F.3d 1, 3 (1st Cir. 1998). For example, if the court entered an order interpreting the terms of the Agreement in one way and another court entered an order interpreting the terms of the Agreement in a different way, there is a substantial risk that MRHD or Belle would incur inconsistent obligations. Although there is no pending state court action between MRHD and Belle,

there is a strong possibility that a contract dispute will arise given the facts of this case. If the court elected to interpret the terms of the Agreement and any of the parties to the Agreement brought a related claim in the courts of Iowa, the Iowa court could interpret the Agreement in a contrary manner. *Cf. Henne*, 904 F.2d at 1212 n.4 (stating that a nonparty was not necessary to the action because "there was no chance that the defendants would be subject to multiple or inconsistent obligations as a result of any interests claimed by the absent parties"); *see also Bohanna v. Hartford Life & Accident Ins. Co.*, No. 11-899-CV-W-DW, 2012 WL 975419, at *6 (W.D. Mo. March 16, 2012) (finding that a beneficiary of an insurance policy was a necessary party due to the substantial risk of inconsistent obligations if the beneficiary were to file suit in another court). Such circumstances would subject MRHD or Belle to a substantial risk of incurring inconsistent obligations under different interpretations of the Agreement.

In light of the foregoing, the court finds that Belle is a necessary party under Federal Rule of Civil Procedure 19(a).

### 2. *Whether nonparty can be joined*

Belle cannot be joined to this action because Belle's joinder would destroy the court's diversity jurisdiction. Belle and MRHD are both citizens of Iowa. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). MRHD concedes that Belle's joinder would destroy diversity. Thus, the court must determine whether Belle is an indispensable party under Federal Rule of Civil Procedure 19(b).

### 3. *Whether action can continue in equity and good conscience*

Federal Rule of Civil Procedure 19(b) outlines the procedure the court must take when a necessary party cannot be joined:

> **(b)** **When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good

12

> conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> 
> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> 
> **(2)** the extent to which any prejudice could be lessened or avoided by:
> 
> **(A)** protective provisions in the judgment;
> 
> **(B)** shaping the relief; or
> 
> **(C)** other measures;
> 
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
> 
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Rule 19(b) requires the court to undertake "a practical examination of the circumstances." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119-20 n.16 (1968). The Eighth Circuit has noted four additional interests established by the United States Supreme Court for the court to consider in determining "whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled":

> First, the plaintiff has an interest in having a forum. . . . Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. . . . Third, there is the interest of the outsider whom it would have been desirable to join. . . . Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Nichols v. Rysavy*, 809 F.2d 1317, 1332 (8th Cir. 1987) (quoting *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 109-11). The court will first discuss the four factors in Rule 19(b), then the court will discuss the four additional factors enumerated by the Eighth Circuit.

### a. Rule 19(b) factors

The court first considers whether Belle will be prejudiced if the court enters a judgment in its absence. "The first point of consideration under [Rule 19(b)]—the extent to which 'a judgment rendered in the person's absence might be prejudicial to the person or those already parties'—addresses the same concerns as does Rule 19(a)(2)." *Teamsters Local Union No. 171*, 173 F.3d at 919 (quoting former Fed. R. Civ. P. 19(b)); *see also* 7 Charles Alan Wright et al., Federal Practice and Procedure § 1608 (3d ed. 2011) ("The first factor to be considered by a court is the extent to which 'a judgment rendered in the person's absence might be prejudicial to the person or those already parties.' This passage is partially a reiteration of portions of Rule 19(a)(2) . . . ." (quoting former Fed. R. Civ. P. 19(b))). "The first factor of Rule 19(b) is concerned with whether the nonparty would 'be adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor.'" *Steele*, 135 F.3d at 1251 (quoting Fed. R. Civ. P. 19 advisory committee notes).

As discussed above, Belle would be prejudiced by any ruling that interprets Belle's rights under the Agreement in its absence because a judicial decision would impair or impede its ability to protect its interests under the Agreement. *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001) ("'[A] contracting party is the paradigm of an indispensable party . . . .'" (quoting *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996))); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 210 F.3d at 252 ("[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party." (quotation omitted)); *United States ex rel. Hall v. Creative Games Tech.*, 27 F.3d 572, Nos. 93-2903MN, 93-3089MN, 1994 WL 320296, at *1 (8th Cir. July 5, 1994) (per curiam) (unpublished table decision) (holding that nonparties were necessary because "[t]hey are parties to the challenged contracts, and their interest in the validity of the contracts would be directly affected by a judgment declaring the contracts void and unlawful"); *Acton Co. of Mass. v. Bachman Foods, Inc.*, 668 F.2d

14

76, 78 (1st Cir. 1982) (finding that the nondiverse parent corporation in the breach of contract action was a necessary and indispensable party to the action brought against the subsidiary because the parent corporation signed the contract at issue in the case). Furthermore, MRHD is likely to be prejudiced by a ruling in Belle's absence because of the high potential for inconsistent obligations. *Cf. Helzberg's Diamond Shops, Inc.*, 564 F.2d at 819 (finding no prejudice to existing party where the potential for inconsistent obligations came from the terms of two contracts that the nonparty voluntarily executed and not from the nonparty's absence in the litigation). Therefore, there is a high probability that a judgment in Belle's absence will prejudice both Belle and MRHD. Thus, the first factor weighs in favor of a finding of indispensability.

The second factor the court must consider is "the extent to which any prejudice could be lessened or avoided." Fed. R. Civ. P. 19(b)(2). "One way to avoid adversely affecting the interests of absent persons or prejudicing those who already are parties is by granting a different remedy than the one originally requested." 7 Wright et al., *supra*, § 1608. "Courts also have been able to use other measures to lessen the possibility of prejudice." *Id*. "If prejudice cannot be avoided by shaping the relief, then dismissal may be required." *Id*. Because the court cannot address MRHD's claims against Penn without determining MRHD and Belle's rights under the Agreement, the court cannot use protective measures or otherwise shape relief to reduce the prejudice involved. *Cf. Teamsters Local Union No. 171*, 173 F.3d at 919 ("As to the second factor, the district court could not have tailored its relief to avoid that prejudice—indeed, in order to reach a judgment on the merits of the case, the court could not have avoided addressing the validity of the [grievance committee's] decision."). Under these circumstances, any attempts by the court to reduce the prejudice involved would be insufficient. Thus, the second factor weighs in favor of a finding of indispensability.

The third factor for the court to consider is "whether a judgment rendered in the person's absence would be adequate." Fed. R. Civ. P. 19(b)(3). "This consideration

15

promotes judicial economy by avoiding going forward with actions in which the court may end up rendering hollow or incomplete relief because of the inability to bind persons who could not be joined." 7 Wright et al., *supra*, § 1608. "'[A]dequacy' refers not to the satisfaction of the [plaintiff's] claims, but to the 'public stake in settling disputes by wholes, whenever possible." *Republic of the Phil. v. Pimentel*, 553 U.S. 851, 853 (2008) (quoting *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 111). As discussed above, the court cannot accord complete relief to the parties in Belle's absence because any injunction against Penn would not bind Belle, and additional litigation would be required to address Belle's rights under the contract, which is the matter truly at issue in this case. *See* 7 Wright et al., *supra*, § 1608 ("The conclusion that additional litigation may result or be required in order to provide complete relief suggests that proceeding without the absent party may be inappropriate."); *see also Spirit Lake Tribe v. North Dakota*, 262 F.3d 732 (8th Cir. 2001) (holding that, where the government, a nonparty, had a competing interest in the land at issue, "the district court could not possibly craft an effective judgment in favor of the [plaintiff] if the government would not be bound to that judgment due to its non-joinder"); *cf. Integrated Bus. Info. Serv. (Proprietary) Ltd.*, 714 F. Supp. at 302. Because any injunction against Penn would not bind Belle, the court cannot accord meaningful relief to the parties. Thus, the third factor weighs in favor of a finding of indispensability.

The fourth factor is "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). "Often dismissal is not a hardship because plaintiff will be able to bring the action in another federal court or in a state court, which frequently is a more appropriate tribunal for dealing with local matters than is a federal court." 7 Wright et al., *supra*, § 1608 (footnote omitted). The Iowa state court system is an adequate alternative forum in which this dispute may be resolved because all parties may be joined in an Iowa state court action and the state court can provide adequate relief. *See Teamsters Local Union No. 171*, 173 F.3d at 919 ("[The

plaintiff] could secure an adequate remedy simply by bringing an action in [state court] . . . ."). Thus, the fourth factor weighs in favor of a finding of indispensability.

### b. Additional factors

First, regarding a plaintiff's interest in a forum, the court considers "whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." *Nichols*, 809 F.2d at 1332 (quoting *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 109 n.3). As discussed above, MRHD can bring this case in Iowa state court. Because MRHD's claims can be adjudicated in the Iowa courts, dismissal of the action in this court will not prevent MRHD from having a forum.

Next, the second factor, "the defendant's wish to avoid multiple litigation, inconsistent relief, or sole responsibility for liability he shares with another . . . meshes closely with the third factor, which requires [the court] to consider the interest of the outsider whom it would have been desirable to join." *Id.* at 1333. As discussed above, the circumstances of this case create a risk of multiple litigation and inconsistent relief, and, if the case proceeds in Belle's absence, it will impair or impede Belle's ability to protect its interests and its rights under the Agreement. Thus, the second and third factors weigh in favor of dismissal.

Lastly, the courts and the public have an interest in "complete, consistent, and efficient settlement of controversies." *Id.* at 1332 (quoting *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 111). In this case, it is in the public interest to dismiss the instant action so that all parties can try their issues in a single proceeding. Thus, the fourth factor weighs in favor of dismissal.

In light of the foregoing, the court finds that Belle is an indispensable party that must be joined in this action. Because Belle's joinder will destroy the court's diversity jurisdiction, the court shall dismiss this case for lack of subject matter jurisdiction.

### B. *Failure to Plead Jurisdictional Amount*

Penn further argues that the court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) because MRHD failed to plead the applicable amount in controversy to establish diversity jurisdiction. MRHD argues that it does not have to include the jurisdictional amount in its pleadings to invoke diversity jurisdiction. MRHD further argues that it has received over $19 million in funds over the past 19 years as revenue and, if it is unable to contract with another casino operator, it will lose revenue in an amount greater than $75,000.

Where a plaintiff does not "allege a specific amount in controversy in [the] complaint, the amount in controversy depends upon the value of the relief [the plaintiff] seeks." *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 396 (8th Cir. 2011). A plaintiff must establish the jurisdictional amount by a preponderance of the evidence. *See id*. In the Complaint, MRHD asks the court for an injunction as well as actual damages for loss of revenue and exemplary damages. Plaintiff has alleged a loss of revenue that is significantly higher than the jurisdictional amount, and the court finds that it is more likely than not that the relief Plaintiff seeks is more than $75,000. *See id*. at 397. Thus, dismissal of the Complaint is not warranted on this ground.

## VI. FAILURE TO STATE A CLAIM

The court finds that, because it does not have subject matter jurisdiction over the instant action, it is not necessary for the court to address Penn's arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6).

## VII. CONCLUSION

In light of the foregoing, the court finds that MRHD has failed to join an indispensable party. Because joinder of that party will destroy the court's diversity jurisdiction, the court finds that it does not have subject matter jurisdiction over the instant action. Therefore, Penn's Motion to Dismiss (docket no. 17) is **GRANTED**. The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**IT IS SO ORDERED**.

**DATED** this 17th day of July, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA